Rosemary M. Rivas (SBN 209147)
Rosanne L. Mah (SBN 242628)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
rmr@classlawgroup.com
rlm@classlawgroup.com

Brian E. Johnson (*pro hac vice forthcoming*)
**GIBBS MURA LLP**
211 N. Union St., Suite 100
Alexandria, VA 22314
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
bej@classlawgroup.com

*Attorneys for Plaintiff Raul Estravit*

# UNITED STATES DISTRICT COURT FOR THE

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ESTRAVIT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEXCOM, INC.,<br><br>Defendant. | Case No. '25CV2845 TWR BJW<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I.    NATURE OF ACTION .................................................................................. 1

II.   PARTIES ...................................................................................................... 2

III.  JURISDICTION AND VENUE ................................................................... 2

IV.   FACTUAL ALLEGATIONS ........................................................................ 3

      A.    People with Diabetes Need the Most Accurate Blood Sugar Level
            Results .............................................................................................. 3

      B.    Dexcom's Glucose Monitoring Systems ......................................... 5

            1.    The Dexcom G6 ..................................................................... 6

            2.    The Dexcom G7 ..................................................................... 9

            3.    Dexcom's Design Change to the G6 and G7 Sensors .......... 11

      C.    Consumers Complain About Grossly Inaccurate Glucose Readings .. 12

      D.    FDA Issues Warning Letter to Dexcom .......................................... 16

      E.    Plaintiff's Experience ...................................................................... 18

V.    CLASS ACTION ALLEGATIONS ............................................................. 19

      Numerosity (Fed. R. Civ. P. 23(a)(1)). ................................................... 19

      Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). ........ 20

      Typicality (Fed. R. Civ. P. 23(a)(3)). ...................................................... 20

      Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)). ......................... 20

      Superiority (Fed. R. Civ. P. 23(b)(3)). .................................................... 21

      Risk of Inconsistent or Dispositive Adjudications and the Appropriateness
            of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and
            (2)). ................................................................................................... 21

      Issue Certification (Fed. R. Civ. P. 23(c)(4)). ......................................... 21

VI.   CAUSES OF ACTION ................................................................................ 22

      COUNT ONE: UNLAWFUL AND UNFAIR BUSINESS PRACTICES ... 22

i

COUNT TWO: VIOLATION OF THE CALIFORNIA FALSE
  ADVERTISING LAW..............................................................25
COUNT THREE: VIOLATION OF THE CALIFORNIA CONSUMERS
  LEGAL REMEDIES ACT ...................................................27
COUNT FOUR: UNJUST ENRICHMENT.................................................29
COUNT FIVE: BREACH OF EXPRESS WARRANTY ............................30
COUNT SIX: VIOLATIONS OF SONG-BEVERLY CONSUMER
  WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES....31
PRAYER FOR RELIEF ..............................................................................33
DEMAND FOR JURY TRIAL ....................................................................34

TABLE OF CONTENTS

Plaintiff Raul Estravit, individually and on behalf of all others similarly situated, alleges the following based on his personal experience and his counsel's investigation:

## I.    NATURE OF ACTION

1.     This proposed class action suit against Dexcom, Inc. ("Dexcom" or "Defendant") arises out of the company's marketing and selling of Dexcom G6 and G7 continuous glucose monitor sensors ("Class Products") that did not have FDA clearance and perform poorly in providing reliable and accurate glucose readings.

2.     Dexcom has approximately 11 million customers in the United States who use the Class Products. Defendant's customers need reliable and accurate glucose readings for effective diabetes management, to prevent health complications, and to make informed decisions about treatment and lifestyle changes. Unreliable and inaccurate readings can lead to missed or incorrect treatments, which potentially can cause serious adverse health consequences, such liver disease, kidney disease, pancreatitis, and/or hyperthyroidism.

3.     Dexcom manufactured and marketed the Class Products as delivering "accurate" and "real-time glucose" readings so the users can "track their glucose" and "easily make daily changes to improve [] long-term health." Dexcom also represented to Plaintiff and to consumers that the Class Products received FDA clearance and were safe, reliable, and accurate in providing continuous monitoring of their blood glucose levels.

4.     In March 2025, however, the FDA issued a warning letter to Dexcom that its G6 and G7 devices (sensors) were adulterated and misbranded because of a design change Dexcom implemented to a component used in the resistance layers of the sensors without obtaining FDA clearance. The FDA described the design change as significant and one that resulted in worse performance in terms of accuracy than the component used in prior G6 and G7 devices. Defendant implemented the design change to save money and its internal testing showed that the redesigned sensors

1  were less reliable and accurate than the prior designs for which it received FDA

2  clearance to sell in the marketplace.

3      5.    Plaintiff, on behalf of himself and all others similarly situated, alleges

4  claims for violations of the consumer protection laws of California, breach of

5  express warranties, and unjust enrichment. Plaintiff seeks all available monetary and

6  equitable relief and any other appropriate relief the Court deems proper.

7                    **II.    PARTIES**

8      6.    Plaintiff Raul Estravit is a resident and citizen of Reseda, California.

9      7.    Defendant Dexcom, Inc. is a Delaware corporation, headquartered at

10  6340 Sequence Drive, San Diego, California 92121. Dexcom is a leading medical

11  device company "on the design, development and commercialization of continuous

12  glucose monitoring or CGM, systems for the management of diabetes and metabolic

13  health by patients, caregivers, and clinicians around the world."[1] Dexcom touts itself

14  as a company "leading the way in glucose sensing technology for 25 years and

15  counting."[2] In 2024, Dexcom's annual revenue was $4.033 billion and it serves

16  approximately "11 million people in the United States using insulin or at risk of

17  hypoglycemia."[3]

18                **III.    JURISDICTION AND VENUE**

19      8.    This Court has jurisdiction over this action under the Class Action

20  Fairness Act, 28 U.S.C. § 1332(d). There are at least one hundred members in the

21  proposed class, the aggregated claims of the individual class members exceed the

22  sum or value of $5,000,000, exclusive of interests and costs, and this is a class action

23

24  _____

25  [1] *See* Dexcom's June 30, 2025 Form 10-Q Report, available at
https://s201.q4cdn.com/758408164/files/doc_financials/2025/q2/b7f15ab5-51de-

26  41e0-a863-2788ccc4ec5d.pdf (last accessed Oct. 1, 2025).

27  [2] *See* https://www.dexcom.com/glucose-sensing (last accessed Oct. 1, 2025)

28  [3] *See* Dexcon's 2024 Annual Report, available at
https://s201.q4cdn.com/758408164/files/doc_financials/2024/ar/dexcom-2024-
annual-report.pdf (last accessed Oct. 1, 2025).

CLASS ACTION COMPLAINT

in which one or more members of the proposed Class are citizens of a state different from Defendant.

9.    This Court may exercise jurisdiction over Defendant because Defendant is headquartered in this District; has sufficient minimum contacts in this District; and intentionally avails itself of the markets within this District through the promotion, sale, and marketing of its products, thus rendering the exercise of jurisdiction by this Court proper and necessary.

10.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims emanated from this District.

## IV.    FACTUAL ALLEGATIONS

### A.    People with Diabetes Need the Most Accurate Blood Sugar Level Results

11.    Diabetes is a disease that affects millions of people. Diabetes occurs when a person's blood glucose, also called blood sugar, is too high. Glucose, the body's main source of energy, is made by the human body but also comes from the types of food that are eaten.

12.    The pancreas makes the hormone, insulin, which is responsible for turning glucose into energy. People with diabetes have one of two types: Type 1, where the body makes little or no insulin; and Type 2, where the body does not use insulin properly, leading to persistently high blood sugar or glucose levels. With both conditions, glucose stays in the blood and does not reach the body's cells.

13.    Diabetes increases the risk of damage to the eyes, kidneys, nerves, and heart and is also linked to certain types of cancer.

14.    It is estimated that over 100 million people have diabetes, with 1.4 million people diagnosed with diabetes each year. People with diabetes have to take steps to prevent or manage the disease to lower the risk of developing diabetes health problems. One way to manage the disease is to manage glucose levels.

3

CLASS ACTION COMPLAINT

15.    Key to managing glucose levels is to monitor blood sugar levels. Knowing blood sugar levels helps people with diabetes make decisions about physical activity, what they can eat, and insulin dosing.

16.    People with diabetes can monitor their blood sugar levels in one of two ways: with a glucose meter and a finger stick ("finger stick check") or a continuous glucose monitor.

17.    The finger stick test involves pricking the finger using a small needle (called a "lancet") to obtain a blood drop, which is placed on a test strip on the glucose meter. The glucose meter will provide a result within seconds.

18.    The finger stick check tells a person their glucose level at a given moment in time. People who have to regularly check their insulin levels have to perform the finger stick test several times a day.

19.    A continuous glucose monitor involves wearing a device that measures your glucose levels 24 hours a day. Continuous glucose monitors use the data to form a graph showing a complete picture of how the wearer's blood sugar levels change over time.

20.    Most continuous glucose monitors utilize a small sensor that is inserted under the skin that measures the glucose levels in the fluids between the body's cells (called interstitial fluid).

21.    There are different types and brands of continuous glucose monitors. Some continuous glucose monitors are connected to an insulin pump, while other continuous glucose monitors operate independently. Continuous glucose monitors send alarms or alert messages when low or high glucose levels are detected.

22.    If a diabetic's glucose levels are too low (called "hypoglycemic"), they can experience weakness, dizziness, trembling and feeling shaky, intense hunger, sweating, a pounding heart, and fear or anxiety. Severe hypoglycemia can be life threatening.

CLASS ACTION COMPLAINT

23.     If glucose levels are too high (called, "hyperglycemia"), a diabetic can experience increased thirst (polydipsia) and/or hunger, frequent urination, headache, irritability, and blurred vision. Most people with diabetes will not feel symptoms of high blood sugar until it is 250 mg/DL or higher. Hyperglycemia can be dangerous both in the short term and long term.

24.     It is very important that people with diabetes have the most accurate blood sugar levels so they can make the right decisions for their health.

**B.     Dexcom's Glucose Monitoring Systems**

25.     Dexcom designs, develops, manufactures, and sells, among other products, continuous glucose monitoring systems for the management of diabetes and metabolic health.

26.     Dexcom launched the Dexcom G6 ("G6") continuous glucose monitor ("CGM") in 2018 and launched the Dexcom G7 CGM ("G7") in 2023.[4] The G6 and G7 are for people with diabetes who want to continuously monitor their blood sugar levels in real-time. Both monitors provide real-time data to allow users to track their glucose trends and "see how food, activity, and medication" can impact their levels so users "can gain more control."

27.     When Dexcom introduced the G6 and G7, it also launched a uniform, nationwide advertising campaign that involved television commercials and extensive digital advertising, among other mediums. Dexcom represented the G6 and G7 as "Best-in-class accuracy" with "Reliable glucose number 24/7 for confident daily decisions."[5]

///

///

---

[4] *See* Dexcom's June 30, 2025 Form 10-Q Report, available at https://s201.q4cdn.com/758408164/files/doc_financials/2025/q2/b7f15ab5-51de-41e0-a863-2788ccc4ec5d.pdf (last accessed Oct. 1, 2025).

[5] *See* https://www.dexcom.com/glucose-sensing (last accessed Oct. 1, 2025).

CLASS ACTION COMPLAINT

### 1. The Dexcom G6

28. In March 2018, Dexcom announced that the U.S. Food and Drug Administration (FDA) authorized the marketing of the Dexcom G6. At the time, Dexcom represented that the FDA "granted a De Novo request for the Dexcom G6® CGM System, the newest generation of CGM for people with diabetes ages 2 and up. The Dexcom G6 is indicated by the FDA for use as both a standalone CGM and for integration into automated insulin dosing (AID) systems. The powerful and revolutionary new Dexcom G6® is the first CGM to receive this classification by the FDA."[6]

29. The FDA establishes criteria, called special controls, for "assuring CGM accuracy, reliability, and clinical relevance as well as describe the type of studies and data required to demonstrate acceptable CGM performance."[7]

30. Dexcom represented that the G6 "was the first type of CGM system permitted by the FDA to be used as part of an integrated system with other compatible medical devices and electronic interfaces, which may include automated insulin delivery systems, insulin pumps, blood glucose meters or other electronic devices used for diabetes management."[8]

31. Dexcom's national advertising campaign touted the G6 as a "[p]owerful glucose monitoring" system that "sends real-time glucose readings automatically to a compatible smart device or Dexcom receiver." According to Dexcom: "It is proven to lower A1C and features a 10-day sensor that is easy to use . . . No fingersticks, no

---

[6] *See* Dexcom's March 27, 2018 Press Release, available at https://investors.dexcom.com/news/news-details/2018/FDA-Authorizes-Marketing-of-the-New-Dexcom-G6-CGM-Eliminating-Need-for-Fingerstick-Blood-Testing-for-People-with-Diabetes/ (last accessed Oct. 1, 2025).
[7] *Id.*
[8] *See* Dexcom's 2024 Annual Report, available at https://s201.q4cdn.com/758408164/files/doc_financials/2024/ar/dexcom-2024-annual-report.pdf (last accessed Oct. 1, 2025).

CLASS ACTION COMPLAINT

scanning!" Moreover, Dexcom represented the G6 as providing users "the freedom to manage [their] diabetes with zero fingerstick or calibrations."[9]

32.    The G6 provides "[s]imple alerts that warn" the wearer of "lows and highs" so that the wearer can go about their day "with greater peace of mind knowing that [the] Dexcom G6 is there."[10] Below is an image of the Dexcom G6 system:



33.    Dexcom touted that the G6 was designed to "automatically transfer data from the transmitter to the Dexcom receiver device as well as allow [the] transmitter to run an algorithm to generate a glucose value and to communicate directly to a patient's compatible mobile device, including iPhone®, iPod touch®, iPad®, and certain Android® mobile devices. A patient's glucose data can also be displayed on wearable devices, like the Apple Watch® and Wear OS by Google devices."[11]

---

[9] *See* https://www.dexcom.com/en-us/g6-cgm-system (last accessed Oct. 1, 2025).
[10] *Id.*
[11] *Id.*

CLASS ACTION COMPLAINT

34.    Moreover, the G6 "is intended to be used continuously for up to 10 days, after which it may be replaced with a new disposable sensor."[12]

35.    Dexcom represented the G6 as having the following key features, among others: (1) continuous glucose readings; (2) customizable alarms and alerts; (3) finger stick elimination; (4) predictive low alert, a feature "intended to predict hypoglycemia before it hits to help avoid dangerous low blood sugar events"; and (5) up to 10-day sensor use.[13]

36.    According to Dexcom, the G6 has "Exceptional Accuracy" with "MARD as low as 6.2% for pediatric patients on day 7 of sensor use, and an overall MARD of 9.0%"[14]

37.    MARD (Mean Absolute Relative Difference) is a statistical measure of a continuous glucose monitoring system's accuracy, and is computed using temporally matched glucose data from a CGM and comparison glucose measurements from a blood glucose meter. The smaller the MARD number, the higher the accuracy. The typical MARD values are between 5-10%.

38.    The G6 is classified by the FDA as a Class II medical device.[15] Class I medical devices pose minimal risk of harm to patients and are generally simple in design. Class II medical devises pose a higher degree of risk to patients and must provide a higher level of assurance that injury or harm will not result. Class I devices are subject to general controls, while Class II devices in addition to general controls, are subject to special controls for assurance of safety and effectiveness. For example, if there is a design change to a Class II device, device manufacturers are required to

---

[12] *Id.*

[13] *Id.*

[14] *See* https://ca.provider.dexcom.com/dexcom-g6 (last accessed Oct. 7, 2025).

[15] *See* Dexcom's 2024 Annual Report, available at https://s201.q4cdn.com/758408164/files/doc_financials/2024/ar/dexcom-2024-annual-report.pdf (last accessed Oct. 1, 2025).

CLASS ACTION COMPLAINT

obtain clearance from the FDA before a Class II device can be legally sold in the United States.

39.    As discussed below, Dexcom conducted a design change to a component used in the resistance layer of the G6 sensors and did not obtain clearance from the FDA before marketing and selling them in the United States.

### 2.    The Dexcom G7

40.    In December 2022, Dexcom announced that the Dexcom G7 received FDA clearance and touted the G7 as "The Most Accurate Continuous Glucose Monitoring System Cleared in the U.S."[16] According to Dexcom, the G7 was "cleared in the U.S. for people with all Types of diabetes ages two years and older, giving more people than ever access to a powerfully simple diabetes management solution."[17]

41.    Moreover, Dexcom touted the G7 as a wearable that is "simple, accurate, [and] effective" [18] and as the "[s]mallest Dexcom sensor."[19] Below is an image of the Dexcom G7 system:

---

[16] *See* Dexcom's December 8, 2022 Press Release, available at https://investors.dexcom.com/news/news-details/2022/Dexcom-G7-Receives-FDA-Clearance-The-Most-Accurate-Continuous-Glucose-Monitoring-System-Cleared-in-the-U.S/default.aspx (last accessed Oct. 1, 2025); *see also e.g.* TV commercial representing that the Dexcom G7 is "THE MOST ACCURATE CGM[,]" available at https://www.youtube.com/watch?v=WgnMlCCXSl4&list=PL3ZB-WDvnVx2MoZMCPX-IiaGsCKuONQoQ&index=11 (last accessed Oct. 7, 2025)
[17] *See* Dexcom's December 8, 2022 Press Release, available at https://investors.dexcom.com/news/news-details/2022/Dexcom-G7-Receives-FDA-Clearance-The-Most-Accurate-Continuous-Glucose-Monitoring-System-Cleared-in-the-U.S/default.aspx (last accessed Oct. 1, 2025).
[18] *See* https://www.dexcom.com/g7-overview (last accessed Oct. 1, 2025).
[19] *See* https://www.dexcom.com/compare-g6-and-g7 (last accessed Oct. 1, 2025).



42.    Dexcom uniformly marketed the G7 as "[b]etter glucose health made easier with Dexcom G7" and [b]etter control your diabetes and lower your A1C with the most accurate CGM system." "With Dexcom G7, you can experience life-changing diabetes management, now more convenient than ever. It's designed to make managing your diabetes easier, so you can focus on enjoying life."[20]

43.    According to Dexcom, the G7 has a "Urgent Low Soon" alert that warns users up to 20 minutes before glucose levels go low so users can take action.[21]

44.    Dexcom also uniformly advertised the G7 as "the most accurate CGM cleared by the FDA and is clinically proven to lower A1C (a blood test that provides information about average levels of blood glucose, over the prior three months), reduce hyper- and hypoglycemia, and increase time in range."[22]

45.    Dexcom advertised the G7 as having the following key features, among others: (1) finger stick elimination; (2) continuous glucose readings; (3)

---

[20] *See* https://www.dexcom.com/g7-overview (last accessed Oct. 1, 2025).

[21] *See* https://www.dexcom.com/g7/how-it-works (last accessed Oct. 1, 2025).

[22] *See* Dexcom's 2024 Annual Report, available at https://s201.q4cdn.com/758408164/files/doc_financials/2024/ar/dexcom-2024-annual-report.pdf (last accessed Oct. 1, 2025).

CLASS ACTION COMPLAINT

customizable alarms and alerts; (4) predictive low alert, a feature "intended to predict hypoglycemia before it hits to help avoid dangerous low blood sugar events"; (5) extended 10-day disposable sensor; (6) "an even more discreet and low profile"; (7) expanded time to replace sensors – "a 12-hour grace period to replace finished sensors."[23]

46.    According to Dexcom, the G7 has a MARD of 8.20% for adults and a MARD of 8.10% for children.[24]

47.    Like the G6, the G7 is also classified by the FDA as a Class II device.[25]

48.    As discussed below, like the G6, Dexcom conducted a design change to a component used in the resistance layer of the G7 sensors and did not obtain clearance from the FDA before marketing and selling them in the United States.

### 3.    Dexcom's Design Change to the G6 and G7 Sensors

49.    Sometime in December 2023, Dexcom made a design change to a component used in the resistance layer of the sensors in the G6 and G7. This component change resulted in unreliable and inaccurate glucose readings with higher MARDS than the G6 and G7 approved by the FDA. Inaccurate glucose readings may cause serious adverse health consequences, including hypoglycemia (low blood sugar) or hyperglycemia (high blood sugar), and insulin dosing errors.

50.    Since the G6 and G7 are classified by the FDA as Class II devices, Dexcom was required to seek FDA clearance before marketing and selling the G6 and G7 with the component change. Dexcom failed to obtain the requisite FDA clearance and failed to disclose to Plaintiff, members of the Class, and the public that the redesigned G6 and G7 sensors did not have FDA clearance and would provide poorer performance.

---

[23] *Id.*
[24] *See* https://www.dexcom.com/accuracy (last accessed Oct. 7, 2025).
[25] *See* Dexcom's 2024 Annual Report, available at
https://s201.q4cdn.com/758408164/files/doc_financials/2024/ar/dexcom-2024-annual-report.pdf (last accessed Oct. 1, 2025).

1

2

### C. Consumers Complain About Grossly Inaccurate Glucose Readings

3    51. Since Dexcom's unauthorized design change, numerous consumers

4    have complained about inaccurate glucose readings with the G6 and G7. Below are

5    a few examples:

6    • "Thanks G7! My daughter has ketones bc dexcom was telling us she

7        was low/in range but she was really high all night. Then we go to

8        change it in the ER and this happens. What a joke. EDIT we do

9        LOTS of finger pokes. Did one yesterday and it was on point. Not

10        every day in diabetes world is picture perfect. Yes, I should have

11        done one at 1 am but instead treated her for a low that wasn't real.

12        She's been in the 400s for days when sick with Covid and didn't

13        have any ketones." Facebook user: Diana Bates Knight, July 22,

14        2025. [26]

15    • "The Dexcom G7 sensor is a total joke. I have used 2 different ones

16        in the past week and both are producing higher readings than my

17        manual meter. At this time it is reading 120 more than the manual

18        one. A total waste of money." Reddit user: AffectionateLock6981,

19        7 months ago.[27]

20    • "I was convinced by pharmacist @ my GP's office to give the

21        Dexcom G7 a try, … Filled RX., 3 sensors $60. Of the three one

22        failed! That's a 33.3% failure rate!, that's ok in tinkertoys but a

23        medical device? Unacceptable! The remaining two seemed to

24

_____

25    [26] *See*

26    https://www.facebook.com/groups/1539517486772872/posts/1817099825681302/
    (last accessed Oct. 1, 2025).

27    [27] *See*

28    https://www.reddit.com/r/dexcom/comments/1fobow6/why_is_dexcom_g7_so_ba
    d/ (last accessed Oct. 2, 2025).

CLASS ACTION COMPLAINT

operate erratically, wild swings in readings. I occasionally go low at night, but this thing was saying 40??? Lowest I recall being is like 80, so question that reading." Reddit user: Cheebachiefer, 7 months ago.[28]

- "My partner was so excited when he got the G7, but it ended up making his life a living hell. Constant disconnects, insanely inaccurate readings, overall abysmal quality control. We tried literally every little thing to try and get it to work again, but it only got worse. Lost a ton of sleep and so many tears of pain and anger. He ended up moving back to G6 because it was so bad. Even the most recent G6's we've been using have noticeably shot up in quality control issues. Everyday I pray something better comes along because both of us are absolutely over everything Dexcom." Reddit user: Zinogre18, 10 months ago.[29]

- "A Nurse Practitioner inserted my first G7 into my abdomen, it failed today, day 4. I don't know what to do, it is a Sunday here and there is no support from Dexcom. I don't have my glucometer with me and I am pretty stressed." Reddit user: Ojmigm95, 7 months ago.[30]

- "I'm new to diabetes after surgery for pancreatic cancer and I've had 2 of the 3 sensors quit early. The first one quit after 6 days, the next one to fail died after 4 days. I contacted Dexcom and they are sending new units but this is a pretty abysmal track record so far." Reddit user: No_Equal_1312, 10 months ago.[31]

---

[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*

13

- "Been using the G7 for a month or so now and its like they all gave me defective sensors. … it says my blood sugar is extremely low (which isnt true). And now on the 6th day, this is my 4th sensor already that is already defective and I need to replace. …" Reddit user: Marciscus, 1 year ago.[32]

- "Im sorry but this is just not at all my experience. It has been abysmal. Im a pregnant t1d and i am using the g7. It has been insanely inaccurate nearly every single sensor no matter what day I am on in the 10 day window. Being pregnant and trying to function appropriately with this system has been atrocious and I would not recommend it to anyone." Reddit user: Substantial_Pool7747, 7 months ago.[33]

- "I had a reading of 20.7 (328) after 36 hours of insertion (and after several incorrect readings), while the fingerstick measurement showed 13.5 (243). So you would suggest just waiting it out? I find that quite difficult, to be honest. I've had T1 since 1999 and recently switched to the Dexcom G7. I'm experiencing quite a few accuracy issues in the first 48 hours, actually worse than the G6. I opted for the G7 because of the direct-to-watch Apple Watch functionality, and of course, it's much smaller. But it's been a bit disappointing so far…" Reddit user: Romini989, 9 months ago.[34]

- "I put on my first g7 last week, and it failed this morning at 12:30 AM. Not having a great start." Reddit user: tirednoelle, 1 year ago.[35]

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*

14

CLASS ACTION COMPLAINT

- "Dexcom G6 is a defective product. Most devices don't last the 10 days posted. They go into an increasing 'No readings alert' mode which begins after 2-7 days of use. During the increasingly brief periods where they show a read, it is often out of rack, when compared to my meter. Some of the time, it shows extremely low, when a meter stick shows otherwise. At least 4 out of 5 of this garbage behaves in this manner. I've called their customer service lunacy so many times. They send me another piece of garbage to replace the preceeding defective device. …" Reddit user: niteflight62, 1 year ago.[36]

- "I had the G7 for one order. Had three consecutive failures, so I sent the rest back and switched back to G6. Since then, now I'm getting more G6 failures and inaccuracies then ever before. I'm using so many strips for calibrations that I'm having to pay out of pocket for them because my insurance won't cover them (three month supplies being used within a month)." Reddit user: PVB0910, 1 year ago.[37]

- "My daughter uses g7. It is so ridiculously far when compared to finger prick! Dexom shows 41, real finger test shows 138. Extremely inaccurate. We've had it tested by nurses, doctors and dexcom is usually about 100 off. And I calibrate." Reddit user: FlounderStatus7647, 1 year ago.[38]

52.    In September 2025, a published report alleged, among other things, that Dexcom "made an unauthorized design change to a key component of the G7," and that some "G7 users have been hospitalized and died" following inaccurate glucose

---

[36] *See* https://www.reddit.com/r/dexcom/comments/1bzvph9/dexcom_g7_with_a_70_failure_rate_in_2024_thus_far/ (last accessed Oct. 2, 2025).

[37] *Id.*

[38] *Id.*

CLASS ACTION COMPLAINT

readings from G7 sensors. According to the report, a man "lost his life in June after his G7 gave him incorrect readings[,[" a six-year old girl "was rushed to the ER when her G7 misread her blood sugar by hundreds of points[,]"[39] and another man "passed out behind the wheel when his G7 failed to alert him to dangerously low blood sugar."[40]

### D.    FDA Issues Warning Letter to Dexcom

53.    After conducting surprise inspections at Dexcom's manufacturing facilities in San Diego, California and Mesa, Arizona in 2024, in March 2025 the FDA issued a warning letter to Dexcom.[41]

54.    The warning letter advised Dexcom that the FDA's inspections revealed several violations of FDA regulations and that the G6 and G7 devices were adulterated and misbranded.

55.    Specifically, the FDA found that Dexcom violated:

- 21 CFR 820.75(b) (failure to establish procedures for monitoring and control of process parameters for a validated process);

- 21 CFR 820.75(a) (failure to establish procedures to adequately validate a process whose results cannot be fully verified by subsequent inspection and test);

- 21 CFR 820.30(c) (failure to adequately establish procedures for design input);

- 21 C.F.R. 820.30(i) (failure to establish procedures for design changes);

---

[39] *See* fn. 25.

[40] *See* Andrew Ford, *et al.*, "Dexcom's Fatal Flaws." Hunterbrook Media (Sept. 18, 2025), available at https://hntrbrk.com/dexcom/ (last accessed Oct. 2, 2025).

[41] *See* March 4, 2025 FDA Warning Letter to Dexcom, available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/dexcom-inc-700835-03042025 (last accessed October 17, 2025).

CLASS ACTION COMPLAINT

- 21 C.F.R. 820.30 (d) (failure to adequately establish procedures for design output);
- 21 C.F.R. 820.30(g) (failure to establish adequate procedures for design validation to ensure that devices conform to defined user needs and intended uses); and
- 21 C.F.R. 820.100(a) (failure to establish adequate procedures for corrective and preventative actions).

56.    Among other things, the FDA learned during its inspections that Dexcom implemented a design change to one of the components used in the resistance layer of the G6 and G7 sensors, which the FDA identified as "significant." Moreover, the FDA criticized Dexcom for failing to adequately validate the change, that is, to sufficiently evaluate and analyze the product's safety, performance, and effectiveness.

57.    The unauthorized design change identified by the FDA was to a key component of the sensors that studies internal to Dexcom showed was inferior under every accuracy metric. Dexcom previously sourced the component from an external supplier and tried to manufacture it in-house. The exact change related to the coating of the sensor filament using a different chemical compound without FDA approval.

58.    According to a former Dexcom executive, Edward J. Carr, "Dexcom completely dropped the ball." Carr also stated that Dexcom wrongly assumed that different needle shapes and sensor coatings were interchangeable without performing validation.[42]

59.    In its March 2025 letter, the FDA concluded that Dexcom's G6 and G7 devices were adulterated under 21 U.S.C. § 351(f)(1)(B) because the company did not have approved applications for premarket approval in effect pursuant to Section 515(a) of the Act, 21 U.S.C. § 360e(a), or approved applications for an

---

[42] *See* Andrew Ford, *et al.*, "Dexcom's Fatal Flaws." Hunterbrook Media (Sept. 18, 2025), available at https://hntrbrk.com/dexcom/ (last accessed Oct. 2, 2025).

CLASS ACTION COMPLAINT

investigational device under exemption Section 520(g) of the Act, 21 U.S.C. § 360(g). The FDA also concluded that the devices were misbranded under Section 502(0) of the Act, 21 U.S.C. § 352(o) because Dexcom "introduced or delivered for introduction into interstate commerce for commercial distribution these devices with major changes or modifications to the devices without submitting a new premarket notification to the FDA, as required by section 510(k) of the Act, 21 U.S.C. § 360(k), and 21 C.F.R. § 807.81(a)(3)."

60. According to the FDA, Dexcom "modified the G6 and G7 sensors by replacing" certain components, when the G6 device "was originally cleared under K182041 and the G7 device was originally cleared under K213919." The FDA noted that the "pivotal clinic studies submitted" in the original 510(k) submissions used specific components, which were "critical …. in G6 and G7 sensors."

### E. Plaintiff's Experience

61. Plaintiff Raul Estravit is a resident and citizen of Reseda, California.

62. Plaintiff Estravit has purchased several Dexcom G7 sensors between January 2024 and March 2025. He purchased the products at a Costco pharmacy in Los Angeles, California and paid a $60 co-pay for three G7 sensors.

63. Before buying the Class Products, Plaintiff Estravit saw ads that were consistent with Dexcom's advertising campaign. He recalls the Dexcom ads describing the G7 as being the most accurate in providing glucose readings. The Class Products did not work as advertised and warranted, and were adulterated, misbranded, and illegal for Dexcom to offer for sale.

64. Had Plaintiff Estravit known that the Class Products were not cleared by the FDA and had worse performance in terms of reliability and accuracy in providing glucose readings that the products cleared by the FDA, he would not have purchased the Class Products or would have paid significantly less for them.

## V.    CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this action individually and on behalf of all other persons similarly situated (the "Nationwide Class") pursuant to the Federal Rule of Civil Procedure 23(b)(2), (b)(3), and (c)(4) initially defined as follows:

> All persons or entities in the United States who bought one or more Dexcom G6 or Dexcom G7 sensors that was not cleared by the FDA.

66.    In the alternative, Plaintiff seeks to represent a California class defined as follows:

> All persons or entities in California who bought one or more Dexcom G6 or Dexcom G7 sensors that was not cleared by the FDA ("California Class").

67.    Members of the Nationwide Class and the California Class are collectively referred to herein as the "Class" or "Class members," unless otherwise stated. Excluded from the proposed Class are Defendant, any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant; and judicial officers to whom this case is assigned and their immediate family members.

68.    Plaintiff reserves the right to re-define the class definitions after conducting discovery and further investigation.

69.    Members of the proposed Class are readily ascertainable because the class definition is based on objective criteria.

70.    **Numerosity (Fed. R. Civ. P. 23(a)(1))**. The Class members are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities are unknown to Plaintiff currently. The parties will be able to identify Class members and the exact size of the Class through discovery and Defendant's records.

71. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3))**. Common questions of law and fact exist for each of the claims and predominate over questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

    a. Whether Dexcom marketed and sold the Dexcom G6 and Dexcom G7 sensors with a design change without receiving FDA clearance;

    b. Whether Dexcom marketed and sold the Dexcom G6 and Dexcom G7 as providing the most accurate blood sugar level readings;

    c. Whether Dexcom's conduct, as alleged herein, violates the consumer protection statutes alleged below;

    d. Whether Dexcom breach express warranties;

    e. Whether Dexcom has been unjustly enriched because of the conduct complained of herein; and

    f. Whether Plaintiff and Class members are entitled to relief, including damages and equitable relief.

72. **Typicality (Fed. R. Civ. P. 23(a)(3))**. Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the Class members. Plaintiff, like all Class members, was damaged by the same wrongful conduct: they bought G6 and G7 sensors that were not cleared by the FDA and that Defendant represented as providing the most accurate blood sugar readings. Accordingly, Plaintiff's claims are typical of other Class members' claims because they arise from the same course of conduct by Defendant, and the relief sought is common to Class members.

73. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**. Pursuant to Rule 23(a)(4), Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Plaintiff has no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiff has retained counsel experienced in complex class action litigation and will prosecute this action vigorously on Class members' behalf.

74. **Superiority (Fed. R. Civ. P. 23(b)(3))**. Pursuant to Rule 23(b)(3), a class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual Class members because the amount of monetary relief available to individual plaintiff is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

75. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

    a. the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant; or

    b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

    c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

76. **Issue Certification (Fed. R. Civ. P. 23(c)(4))**. In the alternative, the common questions of fact and law, set forth herein, are appropriate for issue certification on behalf of the proposed Class.

## VI.    CAUSES OF ACTION

### COUNT ONE
### UNLAWFUL AND UNFAIR BUSINESS PRACTICES,
### Cal. Bus. & Prof. Code §17200, *et seq.*
### (Plaintiff, on behalf of himself and the proposed Nationwide Class or, in the Alternative, the California Class)

77.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

78.    Dexcom has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business practices.

79.    Dexcom's acts and practices, as alleged in this Complaint, constitute unlawful, unfair, and fraudulent business practices, in violations of the Unfair Competition Law ("UCL"). In particular, Dexcom made a design change to a component used in the resistance layer of the sensors in the G6 and G7, which was not cleared by the FDA, as alleged herein. This component change resulted in poor performance in terms of accurate and reliable glucose readings. The inaccurate glucose readings posed serious adverse health consequences, including hypoglycemia (low blood sugar) or hyperglycemia (high blood sugar), and insulin dosing errors, to users with all types of diabetes ages two years and older, such as to Plaintiff and proposed Class members. Dexcom manufactured and sold the G6 and G7 sensors with the design change despite not having received FDA clearance to market and distribute the sensors, and its attendant risks of the sensors providing inaccurate glucose readings.

80.    Dexcom's conduct, as described herein, was and is unlawful in violation of the UCL in that Dexcom violated California's Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code § 111440[43] by manufacturing,

---

[43] "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any [medical] device that is misbranded." Cal. Health & Safety Code § 111440.

marketing, and selling misbranded and adulterated Class Products in violation of the Federal Food, Drug, and Cosmetic Act, the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, the California Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, and other laws as alleged herein.

81.    Dexcom's acts and practices described above are also unfair under the UCL because (a) the gravity of harm to Plaintiff and the proposed Class from Dexcom's acts and practices far outweigh any legitimate utility of that conduct; (b) Dexcom's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the proposed Class; (c) the injury is not one that consumers reasonably could have avoided; and (d) Dexcom's conduct undermines or violates the stated public policies underlying the laws alleged herein.

82.    Moreover, Dexcom's acts and practices also constitute fraudulent practices because they were likely to mislead a reasonable consumer because Dexcom's Class Products' marketing materials, advertisements, product packaging, product labels, and/or package inserts, including instructions and product user guides claimed that the Class Products had properties and benefits they did not have or provide, such as the most accurate glucose readings and FDA clearance. Defendant also failed to disclose that the G6 and G7 sensors did not have FDA clearance, were adulterated and misbranded, and performed worse than the products that were actually approved by the FDA.

83.    Plaintiff suffered injury in fact and lost money or property as a result of Defendant's practices. Moreover, the injuries suffered by Plaintiff and the proposed Class are not outweighed by any potential countervailing benefit to consumers or to competition, and Plaintiff and the proposed Class members could not have reasonably avoided these injuries in light of Dexcom's conduct.

84.    Dexcom's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff and the proposed Class. There is no utility to Dexcom's conduct, and even if there were any

utility, it would be significantly outweighed by the gravity of the harm caused by Dexcom's conduct alleged herein.

85.    Plaintiff and the proposed Class have suffered ascertainable loss and actual damages as a direct and proximate result of Dexcom's unlawful, unfair, and fraudulent conduct as alleged herein.

86.    Plaintiff and the proposed Class are entitled to restitution, injunctive relief, and reasonable attorneys' fees and costs.

87.    Injunctive relief in the form of an order prohibiting Defendant from the misconduct alleged herein is necessary because Plaintiff and the many Class members will continue buying continuing glucose monitors and sensors in the future and will not know if Defendant's sensors are FDA cleared, misbranded or adulterated, and so they will suffer irreparable harm unless and until Dexcom's unlawful and unfair practices are stopped. Restitution for past harms is an incomplete remedy that would only partially address Plaintiff's and Class members' grievances.

88.    Plaintiff brings this claim on behalf of the Class for restitution in the alternative to any claims brought for legal remedies and expressly allege that for purposes of this claim they lack adequate remedies at law. The restitution that may be available under this claim, including for restitutionary disgorgement of revenues attributable to an increased volume of Class Products sales made possible by the challenged practices, may not be recoverable as damages or otherwise at law. Given the market share held by Dexcom, Plaintiff, individually and members of the Class, have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above absent an injunction. Moreover, Dexcom's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

CLASS ACTION COMPLAINT

## COUNT TWO
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### Cal. Civ. Code § 17500, *et seq.*
### (Plaintiff, on behalf of himself and the proposed Nationwide Class or, in the Alternative, the California Class)

89.     Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

90.     California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

91.     Dexcom caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Dexcom, to be untrue and misleading to consumers, including Plaintiff and Class members.

92.     Dexcom has violated § 17500 because its promises of safety, reliability, and accuracy of the Class Products as alleged in this Complaint were misleading in light of the failure to disclose the material facts set forth herein, and thus, Dexcom's representations and promises were likely to deceive a reasonable consumer.

93.     Plaintiff and Class members have suffered an injury in fact and have lost money or property as a result of Dexcom's deceptive practices. In purchasing the Class Products, Plaintiff and Class members relied on the misrepresentations and/or omissions of Dexcom with respect to the safety, reliability, and functionality of the Class Products, including that the Class Products were cleared by the FDA to

25

market and distribute. Dexcom's representations turned out not to be true because the Class Products were and are distributed without FDA clearance and were not reliable and accurate in providing glucose readings. Had Dexcom disclosed these facts, through Dexcom's advertising, marketing, and other publications, such as its website and/or product brochures, Plaintiff would not have purchased the Class Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members overpaid for the Class Products and did not receive the benefit of the bargain.

94.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Dexcom's business. Dexcom's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

95.    Plaintiff, individually and on behalf of the proposed Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Dexcom from continuing its deceptive practices and to restore to the Plaintiff and the Class members any money Dexcom acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief permitted.

96.    Plaintiff and the proposed Class members are entitled to equitable relief, including restitution to compensate Plaintiff and the proposed Class as a result of Dexcom's unlawful, unfair and deceptive, and fraudulent practices, and an injunction enjoining Dexcom's misconduct as alleged herein.

97.    Plaintiff brings this claim on behalf of the Class in the alternative to any claims brought for legal remedies and expressly alleged that for purposes of this claim they lack adequate remedies at law. The restitution that may be available under this claim, including for restitutionary disgorgement of revenues attributable to an increased volume of Class Products sales made possible by the challenged practices, may not be recoverable as damages or otherwise at law. Given the market share held by Dexcom, Plaintiff, individually and as members of the Class, have no adequate

remedy at law for the future unlawful acts, methods, or practices as set forth above absent an injunction. Moreover, Dexcom's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**COUNT THREE**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750, *et seq.***
**(Plaintiff, on behalf of himself and the proposed Nationwide Class or, in the Alternative, the California Class)**

98.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

99.    Dexcom is a "person" within the meaning of Civil Code §§ 1761(c) and 1770 and have provided "goods" within the meaning of Civil Code §§ 1761(a) and 1770.

100.    Plaintiff and the proposed Class members are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770 and their purchases of the Class Products constitute a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

101.    Dexcom's acts and practices, which were intended to result, and which did result in the sale of the Class Products, violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

a.    Dexcom represents that the Class Products had characteristics, uses, or benefits which they do not have;

b.    Dexcom advertises the Class Products with intent not to sell them as advertised;

c.    Dexcom represents that the Class Products are of a particular standard, quality, or grade when they are not;

27
CLASS ACTION COMPLAINT

d.     Dexcom represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

e.     Dexcom represents that their goods have been supplied in accordance with a previous representation when they have not.

102.   As described above, Dexcom sold the Class Products to Plaintiff and the proposed Class members but failed to disclose that the G6 and G7 sensors were not cleared by the FDA, were misbranded and adulterated at the point of sale, in advertising materials, or otherwise. Dexcom intended that Plaintiff and the proposed Class members rely on these omissions in deciding to purchase the Class Products.

103.   Had Dexcom disclosed that the G6 and G7 sensors were not cleared by the FDA, were misbranded and adulterated and that the sensors performed worse in terms of providing reliable and accurate glucose readings, and thus posed serious adverse health consequences, including hypoglycemia (low blood sugar) or hyperglycemia (high blood sugar), and insulin dosing errors, at the point of sale and in advertising materials, Plaintiff, the proposed Class members, and reasonable consumers would not have purchased the Class Products or would have paid less for them.

104.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff, individually and on behalf of the proposed Class, notified Dexcom in writing of the CLRA violations alleged herein. If Defendant does not exercise its opportunity to provide corrective action pursuant to Section 1782(b) within the time provided, Plaintiff will amend this Complaint to seek damages and all other available monetary relief.

105.   Pursuant to California Civil Code § 1780, Plaintiff brings this claim for injunctive relief. Plaintiff and the proposed Class members are entitled to an injunction enjoining Dexcom's misconduct as alleged herein. Plaintiff, the proposed Class, and members of the public will suffer irreparable injury if an injunction is not ordered. They have an interest in buying the Class Products in the future, often see

28

marketing for the Class Products, and will consider purchasing the Class Products in the future if possible, but have no way of determining whether the Class Products received FDA clearance, are adulterated or misbranded, and whether they will provide reliable and accurate glucose readings.

106.   Plaintiff brings this claim on behalf of the Class in the alternative to any claims brought for legal remedies and expressly alleged that for purposes of this claim they lack adequate remedies at law. Dexcom's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(Plaintiff, on behalf of himself and the proposed Nationwide Class)**

107.   Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

108.   By reason of Dexcom's conduct, Dexcom caused damages to Plaintiff and the proposed Class members. Plaintiff and the proposed Class members conferred a benefit on Dexcom by paying for the Class Products that they would otherwise have not purchased, or for which they would have paid less money, had they known the Class Products had a design change that was not cleared by the FDA, were misbranded and adulterated and would provide poor performance in terms of reliable and accurate glucose readings.

109.   Plaintiff and the proposed Class members did not benefit from Dexcom's unlawful and unfair conduct.

110.   Dexcom knowingly benefitted from their unjust conduct. Dexcom marketed and sold the Class Products for more than what the Class Products were worth, and/or accepted the inflated benefits from the sale of the Class Products, at the expense of Plaintiff and the proposed Class.

111. It would be inequitable and unjust for Dexcom to retain these wrongfully obtained profits.

112. Dexcom's retention of these wrongfully obtained profits violate the fundamental principles of justice, equity, and good conscience.

113. Plaintiff and the proposed Class are entitled to restitution of the profits Dexcom unjustly obtained, plus interest.

## COUNT FIVE
## BREACH OF EXPRESS WARRANTY
### (Cal. Com. Code § 2313)
**(Plaintiff, on behalf of himself and the proposed Nationwide Class or, in the Alternative, the California Class)**

114. Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

115. Dexcom is and was at all relevant times a "merchant" with respect to the Class Products under Cal. Com. Code § 2104(1) and a "seller" of the Class Products under § 2103(1) (d).

116. Plaintiff and Class members who purchased the Class Products are "buyer[s]" within the meaning of Cal. Com. Code § 2103(1)(a).

117. The Class Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

118. Dexcom made affirmations of fact or promises to Plaintiff and Class members which relate to the Class Products, as alleged herein, that became part of the basis of the bargain creating an express warranty that the Class Products would conform to the affirmations or promises. Cal. Com. Code § 2313(1)(a).

119. Dexcom's descriptions of the Class Products, as alleged herein, also became part of the basis of the bargain creating an express warranty the Class Products would conform to the descriptions. Cal. Com. Code § 2313(1)(b).

CLASS ACTION COMPLAINT

120.    Dexcom breached its express warranties because the Class Products did not conform as warranted. As a result, Plaintiff and Class members did not receive the benefit of their bargain.

121.    Plaintiff and Class members relied on and/or reviewed and viewed statements or advertisements, such as Dexcom's websites, television commercials, the Class Products' product packaging, product labels, and/or package inserts, including instructions and product user guides, made by Dexcom in choosing to purchase the Class Products.

122.    As a direct and proximate result of Dexcom's breach of its express warranties, Plaintiff and Class members have been damaged in an amount to be proven at trial.

123.    Dexcom was provided notice of the allegations alleged herein by numerous G6 and/or G7 user complaints who contacted Dexcom for replacement sensors due to unreliable and inaccurate glucose readings, the March 4, 2025 FDA Warning Letter, and internal investigations. Additionally, Plaintiff, individually and on behalf of the proposed Class, sent a written demand to Dexcom of its breach of the express warranty alleged herein.

## COUNT SIX
### VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES
#### (Cal. Civ. Code § 1790, *et seq.*)
**(Plaintiff, on behalf of himself and the proposed Nationwide Class or, in the Alternative, the California Class)**

124.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

125.    Dexcom is and was at all relevant times a "manufacturer" of the Class Products within the meaning of Cal. Civ. Code § 1791(j).

126.    Dexcom is and was at all relevant times a "seller" of the Class Products under Cal. Civ. Code § 1791(l).

127.   Plaintiff and Class members who purchased the Class Products sold in California are "buyer[s]" within the meaning of California Civil Code § 1791(b).

128.   The Class Products are "consumer goods" within the meaning of California Civil Code § 1791(a).

129.   The Song-Beverly Consumer Warranty Act applies to "consumer goods sold in this state[.]" Cal. Civ. Code § 1793.2.

130.   The Class Products were also sold in California by Dexcom.

131.   Plaintiff's purchases of the Class Products were sold in California.

132.   Dexcom made express warranties to Plaintiff and Class members within the meaning of California Civil Code §§ 1791.2 and 1793.2, as alleged herein.

133.   Dexcom made affirmations of fact or promises to Plaintiff and Class members which relate to the Class Products, as alleged herein, that became part of the basis of the bargain creating an express warranty that the Class Products would conform to the affirmations or promises.

134.   Dexcom's descriptions of the Class Products, as alleged herein, also became part of the basis of the bargain creating an express warranty the Class Products would conform to the descriptions.

135.   Dexcom breached its express warranties because the Class Products did not conform as warranted. As a result, Plaintiff and Class members did not receive the benefit of their bargain.

136.   Plaintiff and Class members relied on and/or reviewed and viewed statements or advertisements, such as Dexcom's websites, television commercials, the Class Products' product packaging, product labels, and/or package inserts, including instructions and product user guides, made by Dexcom in choosing to purchase the Class Products.

137.   As a direct and proximate result of Dexcom's breach of its express warranties, Plaintiff and Class members have been damaged in an amount to be proven at trial.

CLASS ACTION COMPLAINT

138.   Dexcom was provided notice of the allegations alleged herein by numerous G6 and/or G7 user complaints who contacted Dexcom for replacement sensors due to unreliable and inaccurate glucose readings, the March 4, 2025 FDA Warning Letter, and internal investigations. Additionally, Plaintiff, individually and on behalf of the proposed Class, sent a written demand to Dexcom of its breach of the express warranty alleged herein.

139.   Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff and Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Products, or the overpayment or diminution in value of their Class Products.

140.   Under Cal. Civ. Code § 1794, Plaintiff and the other members of the Class are entitled to costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class defined above, respectfully request that this Court enter:

(a)   An order certifying this case as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as the Class representative, and appointing the undersigned as Class Counsel;

(b)   A judgment awarding Plaintiff and Class members appropriate monetary relief;

(c)   An order entering injunctive and declaratory relief as appropriate under the applicable law;

(d)   An order awarding Plaintiff and the Class pre-judgment and/or post-judgment interest as prescribed by law;

(e)   An order awarding reasonable attorneys' fees and costs as permitted by law; and

(f)   All other and further relief as may be just and proper.

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: October 22, 2025

**GIBBS MURA LLP**

*/s/ Rosemary M. Rivas*
Rosemary M. Rivas
Rosanne L. Mah
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
rmr@classlawgroup.com
rlm@classlawgroup.com

Brian E. Johnson (*pro hac vice* forthcoming)
211 N. Union St., Suite 100
Alexandria, VA 22314
Phone: (510) 350-9705 (Direct)
Fax: (510) 350-9701
bej@classlawgroup.com

*Attorneys for Plaintiff Raul Estravit*

34

# AFFIDAVIT OF ROSEMARY M. RIVAS
## PURSUANT TO CALIFORNIA CIVIL CODE § 1780

Rosemary M. Rivas declares:

1.    I am an attorney duly admitted to practice before this Court. I am a Partner with the law firm Gibbs Mura LLP, counsel of record for Plaintiff Raul Estravit and the proposed Class.

2.    I am one of the attorneys principally responsible for the handling of this action. I am personally familiar with the facts set forth in this declaration, and if called as a witness, I could and would competently testify to the matters stated herein.

3.    This action has been commenced in a county described in California Civil Code Section 1780 as a proper place for the trial of the action. Based on my staff's research, Defendant is headquartered in this District and conducts its business activities in this District.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 22, 2025 in San Francisco, California.


/s/ *Rosemary M. Rivas*
Rosemary M. Rivas